United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINCENT INVESTMENT FUND PCC LIMITED,<br>Plaintiff,<br>v.<br>CONTINUE CAPITAL, et al.,<br>Defendants. | Case No. 26-cv-01494-JSC<br>**ORDER RE: PLAINTIFF'S ADMINISTRATIVE MOTION FOR ALTERNATIVE SERVICE AND DEFENDANT LIN'S MOTION TO DISMISS**<br>Re: Dkt. Nos. 24, 28 |

Plaintiff Wincent Investment Fund PCC Limited, a Gibraltar company, alleges Defendants Xiahong Lin, Continue Capital, Particle Trade, and Ring Protocol designed a fraudulent cryptocurrency scheme. (Dkt. No. 1.)[1] Pending before the Court is Plaintiff's motion to authorize alternative service of the three corporate defendants under Federal Rule of Civil Procedure 4 and Defendant Lin's motion to dismiss under Rules 12(b)(1) and (b)(6). (Dkt. Nos. 24, 28.) Defendant Lin raises a factual jurisdictional attack under Rule 12(b)(1), asserting a company incorporated in the British Virgin Islands, Botbot Limited, does business as Defendant Ring Protocol, and therefore Plaintiff, as a foreign company, has not demonstrated complete diversity jurisdiction. Plaintiff disputes Defendant's evidence and requests discovery to resolve the jurisdictional issue.

Having carefully considered the parties' arguments, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion for alternative service, authorizes discovery to resolve the jurisdictional dispute, and declines to reach the parties' 12(b)(6) arguments at this time for the reasons set forth below. Accordingly, the Court ORDERS

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

the parties to meet and confer regarding a plan for jurisdictional discovery into Botbot's and Defendant Ring Protocol's incorporation and relationship with one another.

## BACKGROUND

### A. Plaintiff's Attempts to Serve the Corporate Defendants

Before filing suit, Plaintiff sent the corporate Defendants two sets of demand letters. On August 20, 2025, Plaintiffs sent a letter to Defendants Continue Capital and Ring Protocol, then Plaintiffs sent another letter to all three corporate defendants on December 23, 2025. (Dkt. No. 28-1 ¶ 2.) The letters were delivered to (1) Defendant Continue Capital via email to contact@continue.capital and via direct message to @ContinueFund on X, (2) Defendant Particle Trade via email to gm@particle.trade and via direct message to @particle_trade, and (3) Defendant Ring Protocol via email to hello@ringprotocol.com and via direct message to @ProtocolRing on X. (*Id.* ¶ 3.) The email to Ring Protocol's address "bounced back" and "was unsuccessful." (*Id.*) All other transmissions were successful, "as confirmed by the absence of any bounce back notification or undeliverable notice." (*Id.*) After receiving no responses from Defendants, "Plaintiff engaged ABC Legal[, …] a professional investigation and process-service firm to investigate" and serve Defendants. (*Id.* ¶ 8.)

First, following its investigation, "ABC Legal has failed to identify any current physical address for" Defendant Continue Capital. (*Id.* ¶ 12.) There is only one address listed on Continue Capital's website, and ABC Legal attempted service at the address. "The process server spoke to front desk personnel at that location, who stated that Continue Capital had moved and was no longer located at that address." (*Id.* ¶ 11.) So, "[t]he only publicly available contact channel for Continue Capital, apart from the […] address at which the entity is no longer located, is the email address contact@continue.capital." (*Id.* ¶ 12.)

Second, ABC Legal could not identify a current physical address for Defendant Particle Trade. "Particle Trade's website does not list any physical address" and "[t]he Dispute Resolution clause in its Terms of Use directs that notice of claims be sent via email at gm@particle.trade." (*Id.* ¶ 14.) Plaintiff's counsel attests, through investigation, she identified Particle Trade's potential founder based on the person's affiliation with a Delaware company, "Particle Platforms,

Inc." (*Id.* ¶ 16.) ABC Legal attempted service on the Delaware company's registered agent in Delaware, who rejected service. (*Id.* ¶¶ 17-18.) ABC Legal also attempted service at the potential founder's San Francisco address shown in public records, but the address's occupant and property manager informed ABC Legal the potential founder no longer lives there. (*Id.* ¶¶ 16-18.)

Third, Plaintiff and ABC Legal could not identify Defendant Ring Protocol's current physical address. (*Id.* ¶ 22.) Ring Protocol's website "does not list any physical address, though it does link to Ring Protocol's X account, @ProtocolRing." (*Id.* ¶ 21.) Additionally, the company's "Privacy Policy directs contact via email at hello@ringprotocol.com," although Plaintiff's email to that address bounced back. (*Id.*) Plaintiff alleges and believes Defendant Lin, whose counsel accepted service on his behalf, is the founder of Ring Protocol, but Defendant Lin, through counsel, denies having authority to accept service on behalf of Ring Protocol or any other defendant. (*Id.* ¶¶ 9, 23.)

**B. Plaintiff's Jurisdictional Allegations**

Plaintiff alleges this Court has diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1 ¶ 14.) Plaintiff is a company in Gibraltar. (*Id.* ¶ 9.) Defendant Xiahong Lin "is a Chinese national who […] resides in" California[2] and "founded and control[s]" two corporate defendants: Continue Capital and Ring Protocol. (*Id.* ¶¶ 1, 13.) The remaining defendant, Particle Trade, is a company which collaborated with the other defendants in launching the product at issue here. (*Id.* ¶ 11.) Each corporate defendant "is a business entity with its principal place of business in San Francisco, California." (*Id.* ¶¶ 10-12.)

**C. Evidence Attached to Defendant's Initial Motion**

Defendant Lin filed a declaration attached to his motion to dismiss which exclusively addresses Defendant Ring Protocol's citizenship. He does not mention his own residence or citizenship, and instead attests the company "Botbot Limited" "has been doing business as Ring Protocol (or Ring Lab) since April 25, 2018." (Dkt. No. 25 ¶ 4.) Additionally, Botbot Limited is

---

[2] Plaintiff's complaint alleges, "upon information and belief," Defendant Lin lives in Alameda County. (*Id.* ¶ 13.) Plaintiff's opposition notes "[s]ubsequent investigation revealed that Lin's […] residence" at the time the complaint was filed "was in San Mateo County, California." (Dkt. No. 30 at 13 n.4.) Defendant Lin does not dispute he is a California resident.

a company in the British Virgin Islands and is "not registered to conduct business anywhere in the United States." (*Id.* ¶ 3.)

Defendant Lin attaches two documents to his declaration. The first is a one-page "certificate of incorporation" from the British Virgin Islands' Registrar of Corporate Affairs, dated April 25, 2018. (Dkt. No. 25-1 at 2 (cleaned up).) The second document is Ring Protocol's Terms of Service, dated April 13, 2026, which is two months after Plaintiff filed its complaint. (Dkt. No. 25 ¶ 4; Dkt. No. 25-2.) In the first sentence, the Terms state it applies to "Products provided by BOTBOT LTD., doing business as Ring Labs[.]") (Dkt. No. 25-2 at 2.) Defendant Lin attests "Ring Protocol has used the Terms of Service since at least January 2024," and the April 13, 2026 date for the Terms "reflects the date that Ring Protocol upgraded its website." (Dkt. No. 25 ¶ 4.) The Terms also "incorporate[]" a "Privacy Policy, available at https://ring.exchange/#/privacy-policy." (Dkt. No. 25-2 at 4.) That Privacy Policy, last modified April 13, 2026, states "Ring Labs is an incorporated company based in the United States and complies with applicable U.S. laws and regulations." *Ring Labs Privacy Policy*, available at https://ring.exchange/#/privacy-policy (last accessed July 23, 2026.)

**D. Plaintiff's Opposition**

Plaintiff attaches a declaration from counsel, Ms. Hudson, to its opposition. (Dkt. No. 30-1.) Ms. Hudson attests she "requested" Defendant Lin's counsel "produce the version of Defendant Ring Protocol's Terms of Service that were in effect on February 20, 2026[,] the date Plaintiff filed the Complaint[,]" and counsel responded the exhibit attached to Defendant Lin's declaration was operative when Plaintiff filed its complaint. (*Id.* ¶¶ 2-3.) Ms. Hudson attests, however, "defense counsel did not provide a copy of the Terms of Service as they existed on [February 20, 2026], an archived or cached version, or any other documentation corroborating that the terms were unchanged between their prior iteration and the April 13, 2026 update," and "Plaintiff's investigation had not uncovered any version of the Terms of Service predating" April 13, 2026. (*Id.*)

The body of Plaintiff's opposition also contains two hyperlinks. First, Defendant Ring Protocol's Privacy Policy, incorporated by the company's Terms of Service, states "Ring Labs is

an incorporated company based in the United States and complies with applicable U.S.. laws and regulations." (Dkt. No. 30 at 15 (citing *Ring Labs Privacy Policy*, available at https://app.ring.exchange/#/privacy-policy).) Second, the X account for "Ring Protocol," bearing the handle "@ProtocolRing," lists its location as "San Francisco, CA" and provides a hyperlink to https://app.ring.exchange, the same website where Ring Protocol's Privacy Policy and Terms are found:




(Dkt. No. 30 at 15 (citing https://x.com/ProtocolRing).)

**E. Defendant's Reply Evidence**

Defendant Lin attaches a declaration in support of his Reply. He, again, does not mention where he lives or Defendants Particle Trade or Continue Capital. (*See generally* Dkt. No. 31-1.) Instead, Defendant Lin attests

> Botbot Limited ("BotBot"), doing business as Defendant Ring Protocol, is a limited company. It is not a partnership. None of its shareholders or owners is a United States citizen. None of its shareholders or owners has physically resided in the United States since February 2026. I am not a shareholder or owner of BotBot. Based on the citizenship of all shareholders or owners of BotBot, it is a citizen of China and Singapore.

(*Id.* ¶ 3.) He also attaches a copy of Ring Lab's Privacy Policy, dated February 20, 2024, available at https://legacy.ring.exchange/#/privacy-policy. (*Id.* ¶ 5; Dkt. No. 31-3.) The document's first sentence states "[t]his Privacy Policy […] explains how BOTBOT LTD. ('Ring

Labs') […] collects, uses, and shares data[.]" (Dkt. No. 31-3 at 2.) The third sentence states "Ring Labs is an incorporated company based in the United States," followed by a sentence "Ring Labs complies with American laws and regulations." (*Id.* at 3.)

**DISCUSSION**

**I. Plaintiff's Motion for Alternative Service**

Federal Rule of Civil Procedure 4(h) provides "a domestic or foreign corporation […] must be served:"

> (1) in a judicial district of the United States:
>
> > (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> >
> > (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1). And Rule 4(e)(1) permits service on an individual "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id.* 4(e)(1). So, here, service under Rule 4(e)(1) must follow California law.

Citing Rules 4(e)(1) and (h), Plaintiff requests "an order (i) authorizing service on Defendant Continue Capital via email at contact@continue.capital, on Defendant Particle Trade via email at gm@particle.trade, and on Defendant Ring Protocol via X at @ProtocolRing, and (ii) extending the time for service of process on these three Defendants." (Dkt. No. 28 at 7.) Plaintiff asserts those methods of service are authorized by California Code of Civil Procedure § 413.30. Section 413.30 permits service "in a manner that is reasonably calculated to give actual notice to the party to be served, including by electronic mail or other electronic technology" when "a plaintiff despite exercising reasonable diligence, has been unable to effect service of the summons by any of the methods authorized under this chapter[.]" Cal. Code. Civ. P. § 413.30(a)(1).

First, Plaintiff has exercised reasonable diligence and been unable to effectuate service on the corporate defendants by other authorized means. Plaintiff and the firm it hired, among other

things, (1) attempted service at every physical address listed across the corporate defendants' websites, (2) investigated and attempted to locate the defendants' potential founders and were unable to effectuate service through those founders, and (3) identified a Delaware corporation potentially related to one defendant, and that corporation's registered agent rejected service. (*See generally* Dkt. No. 28-1.) Therefore, Plaintiff has exercised reasonable diligence and been unable to accomplish service using the methods authorized under California law. *See generally* Cal. Code Civ. P. §§ 415.10-415.50 (authorizing service of corporations by publication and by mail).

Second, Plaintiff's proposed methods of service are "reasonably calculated to give actual notice" to each corporate defendant. Cal. Code. Civ. P. § 413.30(a)(1). Plaintiff intends to serve two of the corporations by email addresses. One email is listed on the corporation's website, while the other is listed in the Dispute Resolution section in a Terms of Use. In other words, these defendants present these email addresses as their preferred methods of contact regarding their business. Plaintiff also intends to serve Ring Protocol via X direct message, given Plaintiff's email to the company was unsuccessfully delivered and the company's website links to the X account. So, like the other companies, Ring Protocol presents its X account as a method of contact regarding its business. Although these defendants did not respond to Plaintiff's demand letters sent via email and direct message on X, all of the proposed channels of service were delivered with no indication the transmission was unsuccessful. Therefore, Plaintiff's proposed methods of service are reasonably calculated to give actual notice to the parties, so the Court grants Plaintiff's motion.

**II. Defendant Lin's Rule 12(b)(1) Motion**

Defendant Lin moves to dismiss the entire case under Federal Rule of Civil Procedure 12(b)(1), asserting Plaintiff has not demonstrated complete diversity jurisdiction under 28 U.S.C. § 1332(a)(2). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendant's motion is a "factual attack," in which he uses extrinsic evidence to "dispute[] the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

> In resolving a factual attack on jurisdiction, the district court may

> review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

*Id.*

Plaintiff requests discovery to resolve the jurisdictional issue. "Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (cleaned up). Plaintiff must provide "an explanation of how discovery might change the outcome of the Court's jurisdictional findings." *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022).

Defendant's insistence Plaintiff has not established diversity jurisdiction rests on three rules. First, "[d]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983). Second, "diversity must be complete." *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 295 (9th Cir. 1989). Consequently, when a foreign corporation is the plaintiff, "[t]he presence of [one foreign corporation] as a defendant alone defeats jurisdiction because diversity is not complete." *Id.* Third, "[f]or purposes of determining diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State [...] by which it has been incorporated _and_ of the State ... where it has its principal place of business.'" *3123 SMB LLC v. Horn*, 880 F.3d 461, 462–63 (9th Cir. 2018) (quoting 28 U.S.C. § 1332(c)(1)) (emphasis added). By contrast, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). So, a corporation can have dual citizenship in the sense it can be a citizen of two states or of both the United States and another country. In the latter case, "when testing for complete diversity" of a general corporation, a court "cannot disregard either its site of corporation […] or its place of business" and should "treat" the company "as an alien citizen." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990–91 (9th Cir. 1994).

United States District Court
Northern District of California

*Faysound* held diversity jurisdiction was not satisfied when the plaintiff, a Hong Kong corporation, sued a New York corporation and 11 insurance companies, one of which was foreign. *Id.* at 292–95. The plaintiff alleged every insurance company defendant was a United States citizen, but one of those defendants, Zurich, adduced evidence it was "a Swiss corporation, not incorporated in the United States[.]" *Id.* at 293. The insurers "therefore[] moved to dismiss for lack of diversity because a foreign corporation was both a plaintiff and a defendant." *Id.* The Ninth Circuit affirmed dismissal, applying *Cheng* and the rule "diversity must be complete" to hold "[t]he presence of Zurich as a defendant alone defeats jurisdiction because diversity is not complete." *Id.* at 295.

Similarly, *Nike* held there was no diversity jurisdiction when a foreign plaintiff sued a corporation with dual citizenship: it was incorporated in Bermuda and its principal place of business was Oregon. 20 F.3d at 990-91. "In this instance, when we treat NIL as an alien citizen due to its Bermuda incorporation, the requirements of diversity jurisdiction are not met" because "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants" and "diversity must be complete." *Id.* at 991.

Relying on these cases, Defendant Lin moves to dismiss the entire case, asserting its evidence disputes Plaintiff's allegations which, if true, would establish complete diversity. It is undisputed Plaintiff is a Gibraltar company. The citizenship of Ring Protocol is disputed. In his initial motion, Defendant Lin attests one defendant, Ring Protocol, is a d/b/a name of a company, Botbot Limited, which is incorporated in the British Virgin Islands. If that is correct, then under *Nike*, the Court must "treat [Ring Protocol] as an alien due to its […] incorporation," meaning complete diversity is not met. *Id.* at 990–91. But in Reply, Defendant Lin pivoted and attested Botbot is "a limited company," explaining it is a citizen of "China and Singapore" based on the citizenship test for LLCs. (*See* Dkt. No. 31-1 ¶ 3; Dkt. No. 31 at 6 (arguing BotBot is "a citizen of China and Singapore" and "[e]ven assuming BotBot is a corporation, a corporation has dual citizenship[.]"))

In response, Plaintiff makes three points. First, Plaintiff "dispute[s] Ring Protocol's relationship to BotBot." (Dkt. No. 30 at 15.) Plaintiff emphasizes how Defendant Lin's evidence

is "silent on legal form, ownership structure, and its principal place of business," Ring Protocol's own Privacy Policy states it is "an incorporated company based in the United States," and the company's "X account identifies San Francisco, California as its location." (*Id.*) Second, Plaintiff asserts "even assuming BotBot Ltd. and Ring Protocol are related, Defendants have not established the citizenship of either […] entity […] for diversity purposes." (*Id.* at 16.) Third, Plaintiff invokes the California-law "alter ego doctrine," where courts "will disregard the corporate form" of a company because of its owner's conduct, to argue Ring Protocol is a California citizen "for diversity purposes." (*Id.* at 16-17.) Given these disputes, Plaintiff requests "[l]imited discovery regarding Ring Protocol and BotBot Ltd.'s organizational structure, ownership, operations, and principal place of business[.]" (*Id.* at 16.)

> Specifically, Plaintiff seeks discovery on: (i) the corporate formation documents and operating agreements for Ring Protocol and BotBot Ltd.; (ii) the ownership structure of each entity, including the identity and citizenship of all members, shareholders, or beneficial owners; (iii) the location of each entity's principal place of business, including where management decisions are made and day-to-day operations are conducted; (iv) the relationship between Ring Protocol and BotBot Ltd., including any d/b/a filings, intercompany agreements, or evidence establishing when Ring Protocol began operating as a d/b/a of BotBot Ltd.; and (v) the version of Ring Protocol's Terms of Service in effect on February 20, 2026.

(*Id.* at 16-17.)

The Court agrees with Plaintiff, in part. There are factual disputes regarding Botbot's incorporation and its relationship with Ring Protocol. Defendant Lin does not explain how he has personal knowledge of Botbot's incorporation in the British Virgin Islands, the names Botbot uses when doing business, when Botbot upgraded its website, or why Botbot's Terms' "last modified" date would automatically update when Botbot upgrades its website. Plaintiff surmises Defendant Lin has personal knowledge of this information because "Lin founded Ring Protocol and, according to the Complaint, exercised exclusive control over its governance." (Dkt. No. 30 at 14 n.4.) But, in his Reply declaration, Defendant Lin attests "I am not a shareholder or owner of BotBot" and appeared to change his story regarding what type of company Botbot is. (*See* Dkt. No. 31-1 ¶ 3.) Moreover, based on Defendant Lin's own evidence, it appears Botbot represents to users that "Ring Labs *<u>is an incorporated company</u>* based in the United States," which raises a

factual dispute over Defendant Lin's assertions Ring Protocol is simply a d/b/a moniker and Ring Protocol "not registered to conduct business anywhere in the United States." (Dkt. No. 25 ¶ 3 (emphasis added).) Therefore, discovery into Botbot's corporate status, its relationship with Ring Protocol, and Ring Protocol's potential incorporation is warranted because those are "pertinent facts bearing on the question of jurisdiction [which] are controverted" and "a more satisfactory showing of the facts is necessary" to ascertain whether Ring Protocol's presence as a defendant destroys complete diversity. *Yamashita*, 62 F.4th at 507 (cleaned up).

Jurisdictional discovery is not warranted, however, with respect to Plaintiff's "alter ego theory" and "the location of each entity's principal place of business, including where management decisions are made and day-to-day operations are conducted." (Dkt. No. 30 at 16-17.) First, Plaintiff does not cite any authority demonstrating a state-law "alter ego theory" determines a corporation's citizenship for diversity purposes. Plaintiff cites two cases: *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523 (2000) and *Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217 (9th Cir. 2005). Neither case addressed citizenship for diversity jurisdiction purposes, let alone held an alter ego theory determines a corporation's citizenship. So, Plaintiff has not adequately explained "how discovery might change the outcome of the Court's jurisdictional findings." *Hernandez*, 632 F. Supp. 3d at 1062. Second, discovery into Ring Protocol's principal place of business is unnecessary because Defendant Lin does not dispute Ring Protocol's principal place of business. (*See* Dkt. No. 31 at 6.) Rather, assuming Botbot is a general corporation, Defendant Lin's argument rests on Botbot's foreign incorporation, rather than either Botbot's or Ring Protocol's principal place of business. If Ring Protocol is a foreign corporation by virtue of Botbot's foreign incorporation, that dispositively breaks complete diversity. *See Nike*, 20 F.3d at 990 n.6 ("[E]ven if [Defendant]'s principal place of business is in Oregon the district court lacked diversity jurisdiction.") In other words, discovery into Ring Protocol's principal place of business cannot "change the outcome of the Court's jurisdictional findings" regarding complete diversity, *Hernandez*, 632 F. Supp. 3d at 1062, because Ring Protocol's incorporation alone determines whether it is a foreign defendant (assuming Ring Protocol is a general corporation). *See Nike*, 20 F.3d at 990–91.

Accordingly, the Court authorizes discovery to resolve whether the Court has diversity jurisdiction, but discovery should be limited to determining what type of entity Botbot Ltd. and Ring Protocol are, whether and where they are incorporated, and the companies' relationship with each other. The Court orders the parties to meet and confer over video regarding a jurisdictional discovery plan. Given the Court's jurisdiction over this case is disputed, the Court does not reach the parties' Rule 12(b)(6) arguments.

**CONCLUSION**

As explained above, the Court grants Plaintiff's administrative motion for alternative service and authorizes limited discovery to resolve the parties' jurisdictional dispute. The Court denies Defendant Lin's motion to dismiss without prejudice to renewal once jurisdictional discovery is complete. The Court orders the parties to meet and confer by video regarding a discovery plan. The parties must file a joint statement proposing a plan by August 5, 2026. The Court will hold a case management conference on August 12, 2026 at 2:00 p.m. via Zoom video to discuss the jurisdictional discovery plan.

This Order disposes of Docket Nos 24.

**IT IS SO ORDERED.**

Dated: July 27, 2026

JACQUELINE SCOTT CORLEY
United States District Judge